**Rotunda v. Petruska**

C.P. of Allegheny County, no. GD08-018798.

*David C. Martin Jr.,* for plaintiff.
*Kristin L. Pieseski* and *Jennings L. Hart III,* for defendants.

WETTICK JR., *J.*, December 1, 2010—Defendants' motion to compel plaintiff to submit to neuropsychiatric testing through a court order barring the attendance of her counsel at the testing is the subject of this opinion and order of court.

This is a dental malpractice action in which plaintiff alleges that she suffered brain injury as a result of September 14, 2006 dental treatment that included the use of nitrous oxide sedation coupled with a Septocaine injection.

At a July 23, 2010 deposition, plaintiff testified that following the September 14, 2006 treatment, she has been experiencing confusion, disorientation, vertigo, depression, increased alcohol consumption, suicidal ideation and attempt, difficulty concentrating and making decisions, an inability to maintain her household and finances, short-term memory loss, difficulty driving, and numerous other emotional and physical complaints.

In her deposition, plaintiff testified that since September 14, 2006, she has been treated on a regular basis by both her family physician (Dr. Ott) and a neuropsychologist (Dr. Neville) and that both physicians have provided her with an opinion that her current mental and emotional difficulties stem from the September 14, 2006 treatment.

Defendants state that the examination which they seek plaintiff to undergo will be conducted by Dr. Lisa Morrow, Ph.D., a neuropsychologist with qualifications similar to those of Dr. Neville.

The dispute in this discovery matter is over whether I may compel plaintiff to undergo this examination

pursuant to a court order providing that her attorney may not be present and the examination will not be recorded.[1] Defendants rely on a September 16, 2010 letter from Dr. Morrow to counsel for defendants (supplement to defendants' motion to compel, ex. C) setting forth three reasons why the evaluation cannot be conducted in the presence of third-party observers:

## Reason One

First, neuropsychological tests must be administered in a standard format. Standardized administration of the tests allows for the results to be compared to the published norms. That is, norms have been developed for these tests by having people of similar age and background with no history of neurological injury complete the tests in a "standard" way. The standard assessment does not include the presence of a third party. The test scores from the normative sample are then used to develop "cut-off" scores or "normal ranges" for comparison when assessing persons with possible brain injury. If standardization is not adhered to (such as having a third party present), this then invalidates the norms. To quote Dr. Robert McCaffrey (McCaffrey, Fisher, Gold & Lynch, 1996), "A standard administration of a test, by definition, must adhere to the procedures outlined in the test manual. If administration of the test does not follow these procedures, then it is inappropriate to compare the results of the examinee to normative results from the standardization sample that

---

1. Defendants' proposed order of court, attached to defendants' supplement, provides that no attorneys may be present for the testing portion of the examination and that the testing portion of the examination may not be recorded by means of audio or video recording.

received the standard administration" (pg 440). The presence of a third party introduces an "unknown variable" into the testing which "may prevent the examinee's performance from being compared to established norms and potentially precludes valid interpretation of the test results" (Official Statement of the National Academy of Neuropsychology, 2000). Defendants' supplement, ex. C at 1.

## Reason Two

Second, the presence of a third party may pose a threat to test security. That is, whoever observes the testing will have seen the questions as well as the answers. As McCaffrey indicates, these tests are not to "become part of the public domain" (page 446). Maintaining test security is one of the specific Ethical Standards of the American Psychological Association's Ethical Principles of Psychologists and Code of Conduct (cf American Psychologist, 2002). The National Council on Measurement in Education also noted in the *Standards for Educational and Psychological Tests* that the administration of tests "should adhere to standard procedures set by test publishers and that testing should be carried out with no distraction" (as cited by Constantinou et al., 2002). *Id.* at 2.

## Reason Three

Finally, the most serious threat to the integrity of the testing is the phenomenon of social facilitation. Basically, any time there is the presence of an observer, or if the testee knows that they are being observed, performance will be altered. Therefore, "the results of the evaluation

will provide a *misleading* representation of the individual's current level of functioning" (McCaffrey et al., page 444). Recent research has found that a third party observer may exert a negative influence on test performance. That is, studies have found that the presence of a third party observer, or the presence of an indirect observer (i.e., a video recorder or an audio recorder), resulted in lower neuropsychological test scores when there was an observer present in the room (Binder & Johnson-Greene, 1995; Constantinou & McCaffrey, 2003; Constantinou, Ashendorf & McCaffrey, 2002; Kehrer, Sanchez, Habif, Rosenbaum & Townes, 2000; Horwitz & McCaffrey, 2005; Lynch, 1997). Studies have found that memory scores in particular were lower for persons who were tested when a third party observer was in the room compared to examinees who were tested without a third party (Lynch, 1997). Constantinou & McCaffrey (2003) concluded that the presence of an observer has a negative influence that constitutes "a threat to the validity and interpretation of test scores." *Id.*

At paragraph 10 of defendants' supplement, defendants state that it would be a breach of Dr. Morrow's standard of care under the guidelines of Dr. Morrow's profession and practice for her to allow a third party to be present for the testing.

I have no reason to question the accuracy of Dr. Morrow's statement that the presence of an observer may skew the test results and that she can proceed with this testing only if other persons are barred from attending.

It is plaintiff's position that a court may compel physical

and mental examinations of persons only as provided for in Pa.R.C.P. No. 4010. Under Rule 4010(a)(4)(i), "[t]he person to be examined shall have the right to have counsel or other representative present during the examination."

It is defendants' position that the court, in the exercise of its discretion, may exclude counsel upon a showing that defendant is seeking to compel plaintiff to submit to a well-recognized standard test that must be administered pursuant to specific procedures designed to remove variables that may influence test scores.

Prior to July 1, 1998, Pa.R.C.P. No. 4010(a) only permitted a court to order a party to submit to a physical or mental examination "by a physician." In *Stokes v. Mattie,* 129 P.L.J. 260, 16 D.&C.3d 565 (1980), I ruled that a court could not compel a party to submit to a mental examination conducted by a clinical psychologist. I stated:

Defendant contends that we should ignore the clear language of this rule because the Supreme Court in promulgating this rule could not have intended to exclude an expert from conducting a mental examination whenever that expert is more competent than a physician to perform this task. We reject this contention. The clear language of a procedural rule may be disregarded only if it is patently inconsistent with the purposes of the rule and will produce results that are absurd or unreasonable. Pa.R.C.P. 127, 128. Rule 4010 is not designed to provide all information that may assist a party in preparing its case. Instead, by permitting a court to order an examination only on motion for good cause shown and by requiring

the court to specify the manner, conditions and scope of the examination, this rule also recognizes the privacy interests of a person whose physical or mental condition is in controversy. And the requirement that the examination be conducted by a physician appears to be a deliberate effort to protect these privacy interests because this requirement will limit the scope, number and types of physical and mental examinations to which a person will be subjected. *Id.* at 261, 16 D.&C.3d at 567-68.

Former Rule 4010 did not specifically address whether counsel for the party to be examined might be present and whether the examination might be recorded. These issues were left to the trial court pursuant to the second sentence of prior Rule 4010(a) which provided that an order permitting an examination "shall specify the time, place, manner, conditions and scope of the examination and the person or persons by whom it is to be made." See *State Farm Mutual Automobile Ins. Co. v. Morris*, 432 A.2d 1089, 1092 (Pa. Super. 1981) (whether a person who is to be examined may be accompanied by his or her attorney is discretionary with the court).[2]

Through amendments effective July 1, 1998, Rule 4010 was amended to include licensed dentists and licensed psychologists as persons who may also conduct a physical or mental examination. The tradeoff was to provide additional protections for the person being examined

---

2. Morris considered a physical examination pursuant to Section 401 of the No-Fault Motor Vehicle Insurance Act, 40 P.S. §1009.401; the second sentence of this provision is almost identical to the second sentence of old Rule 4010(a).

through new subdivisions (a)(4) and (5). See Explanatory Comment-1998.

Under Rule 4010(a)(4)(1), a person to be examined "shall have the right to have counsel or other representative present during the examination." Under Rule 4010(a)(5)(i), a person who is being examined "may have made upon reasonable notice and at the party's expense a stenographic or audio recording of the examination."

The language of the rule is clear. It creates a right to have counsel present during the examination.

As I said in *Stokes v. Mattie*, Rule 4010 is not designed to provide all examinations that may assist a party in preparing its case. It permits only those examinations specifically provided for by the rule. The clear language of the rule allows only examinations that are possible when counsel is present. A trial court may not, in the exercise of its discretion, provide for an examination outside the presence of counsel because through the promulgation of a rule permitting counsel to be present, the Pennsylvania Supreme Court has decided that the interests of the party to be examined in receiving the protections afforded by the presence of his or her counsel outweigh the interests of the party seeking an examination that can only be conducted outside the presence of a third party.

For these reasons, I enter the following order of court:

## ORDER OF COURT

On December 1, 2010, it is hereby ordered that defendants' motion to compel an examination without the presence of plaintiff's counsel is denied.